A94A0694. FLOYD et al. v. PIEDMONT HOSPITAL, INC.
(445 SE2d 844)

SMITH, Judge.

Appellants Doris P. Floyd and Daniel E. Floyd brought, voluntarily dismissed, and then renewed this action against appellee Piedmont Hospital, Inc. ("Piedmont") and Dr. Michael Goodman for medical negligence and loss of consortium. In the original action, Piedmont timely challenged the sufficiency of service in its answer. Piedmont filed a motion for summary judgment in the renewed action, asserting that the complaint against it was barred under the applicable two-year statute of limitation for medical malpractice actions. OCGA §§ 9-3-34; 9-3-71. See *Perry v. Atlanta Hosp. &c. Center*, 255 Ga. 431 (339 SE2d 264) (1986). The motion was granted, and the Floyds appeal.

While she was recovering from surgery, Doris Floyd suffered post-operative spinal meningitis in December 1989, but appeared to recover. However, she suffered a debilitating recurrence of the illness on January 8, 1990. The gist of the Floyds' action is that Dr. Goodman and certain nurses at Piedmont failed to respond in a timely and appropriate manner to symptoms signaling the onset of the second bout of meningitis, which resulted in major and permanent neurological impairment.

Piedmont Hospital is located in Fulton County at 1968 Peachtree Road, N.W., Atlanta, Georgia, 30309. The original complaint was filed January 6, 1992 in the State Court of Fulton County. It disclosed that

Piedmont could be served "by service upon its registered agent for service of process, Marlena LaFavers, 4062 Peachtree Road, N.E., Atlanta, Georgia, 30319." The latter address is in fact the location of a satellite medical care facility in DeKalb County.

On January 23, 1992, counsel for the Floyds spoke with the docket clerk and discovered that Piedmont had not been served. No problem in serving Piedmont had been indicated prior to that date. Counsel then arranged to have the complaint served by a private process server. That same day copies of the summons and complaint were delivered to Eleanor Freund at Piedmont Hospital.

Piedmont answered, raising insufficiency of service as a defense, and subsequently filed a "motion for summary judgment" on that basis.[1] On June 11, 1992, the Floyds served Piedmont's registered agent at the DeKalb County location. The Floyds voluntarily dismissed the action on July 2, 1992. A renewal action was filed pursuant to OCGA § 9-2-61 on September 29, 1992, and Piedmont was timely served.

With the benefit of hindsight, the Floyds concede that these latter efforts, based on the since disapproved view of renewal taken in *Fine v. Higgins Foundry &c. Co.*, 201 Ga. App. 275, 276-277 (1) (b) (410 SE2d 821) (1991), did not serve to eliminate the issue of whether the statute of limitation had run in the original action. See *Hobbs v. Arthur*, 209 Ga. App. 855, 857-858 (2) (434 SE2d 748) (1993). Moreover, the Floyds do not suggest that the subsequent service on Piedmont's registered agent could be considered timely as a matter of law. The question of whether the dismissal of Piedmont was proper in the renewed action turns, therefore, on whether the first attempted service in the original suit was both timely and made on a person eligible to receive service on Piedmont's behalf.

1. We first consider whether the service relied upon was sufficient to confer upon the court jurisdiction over Piedmont, as appellants contend. "Since the object of service of process is to transmit notice of suit to the corporation, it must be made on an agent whose position is such as to afford reasonable assurance that he will inform his corporate principal that such process has been served upon him. [Cit.]" *Scott v. Atlanta Dairies Cooperative*, 239 Ga. 721, 724 (2) (238 SE2d 340) (1977). On the other hand, it is well settled that service of process upon a "mere employee" of the corporation does not satisfy the requirements of OCGA § 9-11-4 (d) (1). See, e.g., *Northwestern Nat. Ins. Co. v. Kennesaw Transport*, 168 Ga. App. 701, 702 (309 SE2d 917) (1983). This court has held that "if the employee is not an officer

---

[1] We note that a "motion for summary judgment" raising only matters in abatement is properly viewed as a motion to dismiss. For examples of situations where the distinction makes a difference, see *Warshaw Properties v. Lackey*, 170 Ga. App. 101 (316 SE2d 482) (1984); *Terrell v. Porter*, 189 Ga. App. 778, 779-780 (2) (377 SE2d 540) (1989).

or has not been expressly designated by the corporation to receive service, it is necessary that he or she occupy some position of managerial or supervisory responsibility within the organization. [Cits.]" *Whatley's Interiors v. Anderson*, 176 Ga. App. 406, 407 (2) (336 SE2d 326) (1985).

"Where the evidence is conflicting with respect to the authority of an employee to receive service, the issue becomes one of fact to be resolved by the trial judge. [Cit.]" Id. The trial court expressly found no issue of material fact in the case. Strictly speaking, it therefore follows that the court made no findings of fact with respect to Freund's authority to receive service on behalf of Piedmont. We likewise find that no issue of material fact exists with respect to the question of Freund's authority to receive service and that the issue may be decided as a matter of law, but these findings lead us to a conclusion that does not support the trial court's judgment.

Freund confirmed by deposition that her salary was higher than that received by some of Piedmont's department heads. She likewise confirmed that she had been delegated a "great deal of responsibility" by past and present hospital presidents.

The evidence also shows that Piedmont is a nonprofit corporation whose sole "member" is Piedmont Medical Center, Inc. ("PMCI"). See OCGA § 14-3-140 (20). According to its articles of incorporation, PMCI was "organized exclusively for the benefit of, to perform the functions of, and to carry out the charitable, scientific and educational purposes of [Piedmont] by providing financial support, management services, educational services, long-range planning, coordination and supervision to the hospital . . . and such other acts or activities as may be requested by the hospital. . . ."

At all times relevant to this case, Freund was the corporate secretary for PMCI. As an officer of the parent corporation within the meaning of OCGA § 9-11-4 (d) (1), Freund was a proper person to receive service of process on *PMCI's* behalf as a matter of law.

Finally, we note that Piedmont and PMCI occupy the same physical space, and the members of Piedmont's Board of Trustees likewise make up the Executive Committee of the Board of Directors of PMCI.

Even assuming that Freund does not herself manage or supervise the activities of others within Piedmont, we do not find this to be dispositive of the issue under these unique facts. In *Browning v. Europa Hair*, 244 Ga. 222 (259 SE2d 473) (1979), the question presented was whether a corporation's attorney could be an "agent" of the corporation to receive service. Grasping the obvious, the Supreme Court did not engage in a strained attempt to find that a corporation's attorney was necessarily charged with managerial or supervisory responsibility. Instead, the Court observed that "not every employee of

a corporation is an agent subject to being validly served with process directed to the corporation. The reason is that the purpose of service is notice, and not every employee can reasonably be expected to notify the corporate officers of the receipt of the complaint. [Cits.] Insofar as the purpose of providing notice is concerned, it can certainly be expected that an attorney for a corporation served with process will notify the corporate officers." Id. at 224.

Similarly, an executive secretary for a hospital, who is paid a salary exceeding that of some of the hospital's department heads, who concedes that she has been delegated a great deal of responsibility, and who simultaneously serves the hospital as an officer for a corporate parent that operates within the same physical space as the hospital itself solely in furtherance of the hospital's humanitarian goals, is a person occupying a position of trust and confidence in the hospital organization. Such a person may reasonably be expected to notify the proper corporate officers of the hospital in the event she is served with process. We find, based on the undisputed evidence, that Freund is an agent of Piedmont for service of process as a matter of law, and that Piedmont was therefore properly served within the meaning of OCGA § 9-11-4 (d) (1). Consequently, the court's dismissal of Piedmont from the case cannot be supported on this basis.

2. Though sufficient under OCGA § 9-11-4 (d) (1), the question remains whether service upon Piedmont was timely under the applicable statute of limitation, OCGA § 9-3-71. "The statute of limitation is tolled by the commencement of a civil action at law. OCGA § 9-11-4 (c) requires that service of a complaint shall be made within five days of the filing of the complaint. If an action is filed within the period of limitation, but not served upon the defendant within five days or within the limitation period, plaintiff must establish that service was made in a reasonable and diligent manner in an attempt to insure that proper service is made as quickly as possible. If reasonable and diligent efforts are not made to insure proper service as quickly as possible, plaintiff is guilty of laches, and in such case, service will not relate back to the time of the filing of the complaint for the purpose of tolling the statute of limitation." (Citations and punctuation omitted.) *Anderson v. Hughes*, 196 Ga. App. 186, 187 (1) (395 SE2d 623) (1990).

The Floyds filed their original complaint in Fulton County, which is the county where the main hospital facility is located and, of course, where Doris Floyd's injuries were sustained. The complaint disclosed Piedmont's registered agent for service and the address at which she might be served. The Floyds concede "in retrospect" that the registered agent was located outside the Fulton County line in DeKalb County and that this may explain the delay in service. However, there appears to be no fundamental reason why the Floyds

should expect that service could not be made for this reason. First, Piedmont Hospital, the location where Doris Floyd's injuries occurred, does business in Fulton County, and Piedmont can in fact be served there. This is therefore not the usual case where the defendant is *required* to be served by second original under OCGA § 9-10-72. Moreover, our Code clearly contemplates situations where the sheriff of one county properly ventures outside the county to serve process. See OCGA § 15-16-22; see also *Re/Max 100 of Sandy Springs v. Tri-Continental Leasing Corp.*, 177 Ga. App. 111, 112 (1) (338 SE2d 542) (1985). There is no indication that service was in fact *precluded* in this case because the address of the registered agent was not a Fulton County address; the record merely reflects that no *attempt* had been made between January 6, 1992 and January 23, 1992 to serve Piedmont. Even if there is some undisclosed reason why the Fulton County marshal's office would not serve Piedmont in neighboring DeKalb County, Piedmont neither suggests such a reason nor intimates that the Floyds should have known of it.

We find no relevant distinction between the present case and *Deloach v. Hewes*, 211 Ga. App. 321 (439 SE2d 94) (1993), in which we reversed the trial court's dismissal for lack of diligence. As in *Deloach*, the proper address to serve Piedmont was included in the original complaint. As in *Deloach*, an inquiry was made into service prior to the time any action was actually taken by the Fulton County marshal's office. Unlike the situation presented in *Deloach*, however, the Floyds did not simply wait for the marshal's office to act. Less than three weeks after filing their complaint, the Floyds arranged for a private process server to expedite service. The very day the first inquiry was made and the Floyds discovered that no action by the marshal's office was indicated, the service papers were retrieved and service was accomplished by a private process server. Since we find neither the facts nor the law supports a finding that the Floyds failed to exercise due diligence in assuring that Piedmont was served as quickly as possible, the court's grant of summary judgment to Piedmont cannot be supported on this basis.

3. The only other theory presenting a possible basis for the grant of summary judgment to Piedmont is the notion that medical negligence cases are subject to voluntary dismissal and renewal under OCGA § 9-2-61 only if renewal is accomplished within two years of the date of injury. We find Piedmont's arguments in favor of this novel theory unpersuasive. Aside from the need to disapprove countless precedents implying otherwise, Piedmont in effect asks this court to render meaningless the clear import of OCGA § 9-11-9.1 (f), which expressly limits the circumstances under which renewal is possible in professional malpractice cases after the applicable limitation period has expired. We agree with appellants that this theory does not sup-

port summary judgment in favor of Piedmont.

Since no proper basis exists for the trial court's dismissal of Piedmont from this action, the grant of summary judgment to Piedmont must be reversed.

*Judgment reversed. Pope, C. J., and McMurray, P. J., concur.*

DECIDED JULY 1, 1994.

*Chambers, Mabry, McClelland & Brooks, Eugene P. Chambers, Jr., Dale C. Ray, Jr.,* for appellants.

*Long, Weinberg, Ansley & Wheeler, Robert G. Tanner, M. B. Satcher III, P. Cole Law, Downey, Cleveland, Parker & Williams, Y. Kevin Williams,* for appellee.